**Revised December 1, 2000**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-60819

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BART HENRIQUES,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi

November 27, 2000

Before DAVIS, EMILIO M. GARZA, Circuit Judges, and POGUE[*]

**DONALD C. POGUE, JUDGE:**

Defendant-appellant Bart Henriques ("Henriques") appeals his conviction on one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The district court sentenced Henriques to 42 months imprisonment, followed by three years of supervised release. Henriques appeals on several grounds.[1] The outcome of the case turns on one issue: whether the

---

[*] Judge for the United States Court of International Trade, sitting by designation.

[1] Henriques claims that the district court improperly denied his motion to suppress evidence, that the court abused its discretion in finding that remarks by the prosecutor in the grand jury proceeding at most constituted harmless error, that the prosecutor withheld evidence favorable to Henriques in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that the statutory schemes are void for vagueness, and that the evidence was insufficient to

evidence is sufficient to support a finding that the images were transported in interstate commerce. We agree with Henriques that the evidence does not support such a finding. We, therefore, reverse the conviction.

## **FACTS AND PRIOR PROCEEDINGS**

Henriques was indicted and convicted by a jury of one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).[2] It is from this verdict that Henriques filed a timely appeal.

The facts relevant for this appeal are as follows: In February 1998, Warren County's Sheriff's Department was contacted

---

support a verdict of guilty beyond a reasonable doubt.

[2] 18 U.S.C. § 2252A is entitled "Certain activities relating to material constituting or containing child pornography," and section 2252A(a)(5)(B) reads as follows:

> (a) Any person who–
>   (5) either–
>    (B) knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, shall be punished as provided in subsection (b)

Subsection (b) discusses fines and imprisonment. 18 U.S.C. § 2252A (a)(5)(B) (1997).

The statute requires a minimum of three images to convict. *See* Id. Henriques was convicted under this minimum. His conviction was based on three images, G-11, G-20, and G-21.

The statute was amended on October 30, 1998. The amended version substitutes "an image" for "3 or more images." 18 U.S.C. §§ 2252A(a)(5)(B). This version of the statute gives the defendant an affirmative defense upon a showing that the defendant possessed fewer than three images. *See Id.* at (c). Although the district court refers to the amended version of the statute, we find that it is not applicable in this case, because the indictment charges Henriques with violating 18 U.S.C. § 2252A(a)(5)(b) on or about February 23, 1998, before the statute was amended.

2

about a runaway teenage girl named Gabrielle Phillips. The Sheriff's Department discovered Phillips at Henriques' apartment. In the process of searching for Phillips, the Sheriff's Department learned of several other children who visited Henriques' apartment and that Henriques often used his computer to view both child and adult pornography in the youths' presence. After Phillips' removal from Henriques' apartment, Henriques was called into the Office of Internal Affairs at the Vicksburg Police Department. There, at the Department's request, he voluntarily consented to a search of his apartment, putting his consent in writing. The police then searched Henriques' apartment during which time Henriques' computer was seized and taken into custody.

In March 1998, FBI Special Agent Jeffrey Artis took the computer into FBI custody and transported it for examination by a bureau computer expert. At this time, without turning on the computer, a "mirror" copy of the computer's hard drive was made. Upon review of this copy, several files containing pornography, all organized into subdirectories, were found on the computer.

At trial approximately seventeen images found on Henriques' computer were put into evidence. The jury concluded that three images, Exhibits G-11, G-20, and G-21, fell within the behavior prohibited by 18 U.S.C. § 2252A.[3] As a result of the jury's finding, Henriques was convicted.

---

[3] *See supra* note 2.

## Sufficiency of Evidence

The issue of sufficiency of evidence is a question of law which we review de novo. *See Aguillard v. McGowan*, 207 F.3d 226, 228 (5th Cir. 2000). Evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Richards*, 204 F.3d 177, 206 (5th Cir. 2000)(citing *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982)). We must also view the evidence in the light most favorable to the verdict, in this case in favor of the government. *See United States v. Williams*, 132 F.3d 1055, 1059 (5th Cir. 1998).

The statute mandates that at least three of the images in the defendant's possession traveled in interstate commerce. This includes any image "that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(5)(B)(1997). Transport of the goods through interstate commerce is an element of the crime which the government must prove to obtain a conviction. *Cf. The National Stolen Property Act,* 18 U.S.C. § 2314 (2000); *See United States v. Vontsteen*, 872 F.2d 626 (5th Cir. 1989)("[T]he government directly proved that [the] pipe . . . was shipped from Texas to Louisiana, thereby satisfying . . . an element of section 2314.").

Henriques contends that the government failed to prove this element.

The requirement in 18 U.S.C. § 2252A that child pornography be transported in interstate commerce raises two issues. First, to what extent must the government prove that the image came from the Internet.[4] Second, does proof that a picture was downloaded from the Internet satisfy the jurisdictional nexus of "interstate commerce."

Although this court has not previously addressed the extent of the government's burden in connecting the specific images to the Internet, the Tenth Circuit has already developed a test to ensure that the government satisfies its burden. The Tenth Circuit requires the government to independently link all the images upon which a conviction is based to the Internet. *See United States v. Wilson*, 182 F.3d 737, 744 (10th Cir. 1999)(holding evidence linking one diskette to interstate commerce was not sufficient to allow an inference that the other two diskettes were similarly linked). This standard limits the government's ability to build a case on inferences, e.g., by analogizing that since one image was

---

[4] Use of the Internet has drastically increased over the past decade. As of November 1999, the U.S. online population was estimated at 101 million and continuing to grow. *See* David Lake, *Spotlight: How Big is the U.S. Net Population*, available at <http://www.TheStandard.com>. Not only has the individual online population grown, but the Internet is now estimated to connect more than 159 countries. *See ACLU v. Johnson*, 194 F.3d 1149, 1153 (10th Cir. 1999) The Internet is "wholly insensitive to geographic distinctions[,]" making it difficult to use the present legal framework to analyze this modern situation. *American Library Assn., et.al. v. Pataki*, 969 F. Supp. 160, 164 (S.D.N.Y. 1997).

downloaded from the Internet, the rest of the images must also be connected to the Internet.

The transport of images through interstate commerce, as an element of the crime, must be proved beyond a reasonable doubt. Requiring the government to independently link each image to interstate commerce is therefore necessary and appropriate in order that the government satisfies its burden. If we did not require the government to independently link each image to interstate commerce, we would allow the government to obtain a conviction without proving beyond a reasonable doubt each element of the crime. Therefore, we adopt the Tenth Circuit's position.

In this case, the government presented little evidence connecting all the images to the Internet independently. Indeed, as to one of the images, the government presented no evidence connecting it to the Internet. It is not disputed that the evidence supports a finding that Henriques accessed the Internet. Nor is it disputed that Henriques' computer contained pornographic material. The required jurisdictional nexus between the images and interstate commerce, however, was not established.

The government established that Henriques owned a computer and subscribed to an Internet Service Provider ("ISP"). Through this service, Henriques was able to access and view images on the Internet. His computer also contained pornographic images, which were located on his hard drive. These images were stored in

6

separate folders on his computer. The evidence clearly supports a finding that these folders were consciously created. Also, since Henriques owned the computer, the computer was found in his apartment, and he was the only adult living in the apartment, the jury could reasonably conclude that the evidence establishes that Henriques was the individual responsible for the images found on the hard drive.

Despite this evidence, at trial, no evidence was introduced by the government to establish whether the images came from a website, were downloaded from a floppy disk, or came from some other source, such as another hard drive.[5] Rather, Agent Artis, in his trial testimony, argued that if images of nude children were on the hard drive, and that computer was connected to the Internet, somebody had to use the Internet to put them there. *R.* Vol. 4, page 320.[6]

---

[5] Agent Artis testified that

> What we were looking for was child pornography on the computer there, and that's what we found. Now where it came from, what site or what name is written underneath the picture was irrelevant. The fact what we were looking for was, was that child pornography was on the computer. That's what we found.

*R.* Vol. 4, page 338-9.

[6] This argument became clear during Henriques' attorney's questioning of Agent Artis.

> Q. And the focus of this investigation is somebody – – you believe, in your investigation, that somebody downloaded off of the Internet images of nude children and they exist on that hard drive. Correct?
>
> A. Yes. There was images of children
>
> Q. All right. And in order to get them on the hard drive, somebody has to utilize what we've previously talked about, an Internet service provider, and hook onto the Internet – – dial a phone number through their computer, hook on, and then search and

In order to prove the connection between the images found on Henriques' hard drive and the Internet, the government relied on the testimony of one witness and internal evidence on some of the images. Witness testimony was introduced to prove that Henriques viewed pornographic images on the Internet.[7] This testimony, however, was only applicable for a few of the images, while the government introduced approximately seventeen images for deliberation by the jury. The attorney for the government also argued that the interstate commerce element of the statute was satisfied because website addresses were embedded on some of the images.[8]

The government attorney, however, never discussed how the connection to the Internet can be made for the photographs with no internal evidence or without testimony connecting the images to the Internet. Rather, the government attempted to prove the Internet connection mainly through inferences. This, however, leaves a gap in the evidence.

Phillips, the girl found at Henriques' apartment, testified

---

find one of these photos and then download it onto the computer. Correct?

A.  That's correct.

*R.* Vol. 4, page 320.

[7] Phillips identified some of the images as ones she witnessed Henriques view on the Internet. *See infra* note 9 and accompanying text.

[8]  The government attorney argued that "in certain of those photographs there is internal evidence which suggests that they [the images] are indeed generated from the Internet." *R.* Vol. 4, page 488.

that Henriques used the Internet to view pornographic images in her presence. She identified a model in G-11 as one she saw Henriques view on the Internet.[9] The government relied on Phillips' testimony to prove a connection between the images and the Internet. Although Phillips' testimony connects one image, G-11, to the Internet, her testimony cannot be used to infer that the other two images upon which Henriques' conviction is based, were also obtained from the Internet.

Of the other two images, one, G-21, contains a world-wide web address embedded on the image. Although, it is possible for this "internal evidence" to support a connection to the Internet for G-21, the government is still required to independently connect G-20 to the Internet. The third image, G-20, does not contain internal evidence. There was also no testimony introduced to connect this specific image to the Internet. Since there is no evidence to connect this last image, G-20, to the Internet, we find that there is not independent evidence connecting all three images to the Internet.[10]

---

[9] Phillips identified models in three exhibits, G-11, G-13, and G-22. Of these three images, the jury only held G-11 as meeting the statutory requirements, making Phillip's identification of the other models irrelevant for this court's purposes.

[10] The failure of the government to meet its burden for all three images, renders it unnecessary to decide the issue of whether downloading an image from the Internet satisfies "interstate commerce." It should be noted that the issue of interstate commerce and the Internet raises competing considerations, such as, the scope of federal jurisdiction and the global nature of the Internet. *See generally American Library Assn., et. al. v. Pataki*, 969 F. Supp. 170 (S.D.N.Y. 1997); *United States v. Carroll*; 105 F. 3d 740 (1st Cir. 1997); *ACLU v. Johnson*, 194 F. 3d 1149 (10th Cir. 1999);

9

Although the evidence clearly established Henriques use of the Internet, since the government did not attempt to prove the nexus to the Internet for the three images independently, Henriques' conviction must be reversed.[11]

## Conclusion

For the foregoing reasons, Henriques' conviction must be overturned.

---

*ACLU v. Reno*, 217 F.3d 162 (3rd Cir. 2000).

[11] Because we find that the evidence was insufficient to support a finding of guilty beyond a reasonable doubt, it is unnecessary to consider Henriques other claims.