**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**October 15, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30159

_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

                          versus

ANTHONY R. VENSON,

      Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:01-CR-60043-01

_____

Before REAVLEY, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Anthony R. Venson appeals his convictions for possessing child pornography transported in interstate commerce under 18 U.S.C. § 2252A(a)(5)(B) and receiving child pornography mailed in interstate commerce under 18 U.S.C. § 2252A(a)(2)(A). He argues that there is insufficient evidence of the child pornography's transportation in interstate commerce. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Venson's convictions resulted from a sting operation conducted by the Dallas Police Department and the U.S. Postal Service that targeted purchasers of child pornography. The Department of Justice funded the operation. In an effort to enforce child pornography laws, the government sent an email to 278 people advertising a company called "Providers 4 You." The email told its recipients that this company could provide unspecified "hard to find materials."

Venson responded to the email and was directed to a special government-operated website created for the sting operation. There, he filled out a form that included his email address and indicated that his "special request" was for "erotic kid videos." A series of email correspondence began between Gregory Dugger, an undercover agent, and Venson discussing the material, its price and delivery. Dugger asked what age, gender, and theme interested Venson. Venson replied one hour later, telling Dugger that he wanted material featuring girls between the ages of 8 and 18 involved in "explicit sex acts." Dugger offered to provide a list of these types of videos and their prices, and Venson requested that it be sent to him. Venson ordered seven videos and sent a money order to Dugger.

Dugger contacted a U.S. Postal inspector in New Orleans to advise him of the situation. The two arranged for a controlled delivery of the requested videos. Dugger made copies of seven videos that the Dallas Police Department had previously confiscated

and sent them to the Postal Inspector.  The Inspector then packaged the videos and, disguised as a mailman, delivered them to Venson at his home in Louisiana.  Venson personally signed for and accepted the package.

Federal agents executed a search warrant after the delivery. Venson admitted during the search that he requested the videos and that he had downloaded other child pornography off the internet. An examination of his computer revealed that Venson had more than a thousand images of child pornography on his computer.  Included in these images was a well-known series of child pornography that originated in Texas.  These images came from a father who sexually molested and photographed his young daughter, and then placed the images on the internet.  Hearing this evidence, the jury convicted Venson of both possessing and receiving child pornography.

On appeal, Venson first argues that there is insufficient evidence of the interstate elements of these offenses.  "In reviewing an appeal based on insufficient evidence, the standard is whether any reasonable trier of fact could have found that the evidence established the appellant's guilt beyond a reasonable doubt."[1]  This court reviews the evidence in the light most favorable to the verdict.[2]  We do not ask "whether the trier of

---

[1] *United States v. Jaramillo*, 42 F.3d 920, 922-23 (5th Cir.), *cert. denied*, 514 U.S. 1134 (1995).

[2] *Id*. at 923.

fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."[3]

As to the possession charge, there is sufficient evidence to support the jury's verdict. To convict Venson under 18 U.S.C. § 2252A(a)(5)(B), the government had to show that he knowingly and intentionally possessed a computer and computer storage disks containing child pornography, as defined by 18 U.S.C. § 2256, which had been transported in interstate commerce. Venson argues that the government provided no evidence of interstate transportation of his child pornography. His argument fails. Venson admitted downloading the images off the internet. The government provided evidence that a group of these images originated in Texas and was widely disseminated. The evidence indicating that Venson took these images from the internet provided the jury with sufficient evidence to find that they moved in interstate commerce.[4]

Venson next argues that his conviction for receipt of child pornography cannot stand because the videotapes were not "mailed" within the meaning of 18 U.S.C. § 2252A(a)(2)(A).[5] We reject

---

[3] *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

[4] *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir.), *cert. denied*, 537 U.S. 888 (2002) (joining the First Circuit in holding that "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce."

[5] 18 U.S.C. § 2252A(a)(2)(A) punishes any person who "knowingly receives or distributes . . . any child pornography that has been mailed, or shipped or transported in interstate or

4

Venson's argument.  The evidence in this case indicates that the package Venson received was delivered by an official post office agent.  It had the proper postage on it, and it was sealed and addressed to him.  Under these circumstances, the package constituted mail, even if it was taken out of the "regular stream of the mail."[6]  The controlled delivery of the videotapes in this case therefore satisfied the "mail" requirement of 18 U.S.C. § 2252A(a)(2)(A).

We also reject Venson's argument, raised for the first time on appeal, that the government's behavior in this case was so "outrageous" as to violate his due process rights.  In order to prevail on a claim of outrageous government conduct, Venson "must show government overinvolvement combined with a passive role by the defendant."[7]  This he cannot do.  The evidence clearly shows that the government did not at any time coerce, encourage, or mislead Venson into purchasing the videotapes; indeed, the government took special care not to inadvertently encourage Venson to purchase child pornography.  Nowhere in its initial e-mail or on the

foreign commerce by any means, including by computer."

[6] *See United States v. Dornhofer*, 859 F.2d 1195, 1197–98 (4th Cir. 1988) (concluding that the "mailing" element of 18 U.S.C. § 2252(a)(2) was satisfied when the package was addressed, sealed, and delivered by a postal employee, even though it was taken out of the "regular stream of the mail"); *United States v. Moore*, 916 F.2d 1131, 1137 n.12 (6th Cir. 1990);

[7] *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997).

5

"Providers 4 You" website did the government advertise "child pornography." The first mention of child pornography came from Venson when he filled out his "special request." Venson was at all times an active and willing participant in the endeavor, and his claim that the government's behavior was outrageous must fail.

We similarly reject his argument that the government has somehow violated the "intent of Congress" in passing the Child Pornography statutes. Even if congressional intent were somehow relevant to this case, the government's careful, controlled delivery of the videotapes evinces the utmost care with which it safeguarded the interests of the children depicted in the videotapes Venson purchased. Venson's contention to the contrary is without merit.

AFFIRMED.